IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA
CASE NO.: 2023-CA-004068
DIVISION: CV-G

AMBER MILLS, an individual

       Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a for-profit, foreign
corporation,

       Defendant.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, AMBER MILLS ("Mrs. Mills), sues Defendant, STATE FARM MUTUAL

AUTOMOBILE INSURANCE COMPANY ("State Farm") a for-profit corporation and as

grounds therefore would state:

## NATURE OF THE ACTION, JURISDICTION AND VENUE

1. This is an action for damages resulting from State Farm's failure to settle Mrs. Mills claim

   against its insured Mary Laseter ("Mrs. Laseter"), when it could have and should have done

   so.

2. This is an action for damages in excess of fifty thousand dollars ($50,000.00), exclusive of

   costs and attorney's fees, interest and costs.

3. Venue is proper in this Court because the acts giving rise to this action occurred in Duval

   County, Florida. The subject accident occurred in Duval County, Florida, the underlying

   lawsuit was filed in Duval County, Florida and the insurance contract between State Farm

   and its insured, Mary Laseter, was issued in Duval County, Florida and the failure(s) to

settle the claim occurred in Duval County, Florida.

## GENERAL ALLEGATIONS

4.  At all times material to this cause, the Plaintiff, Amber Mills was a resident of and domiciled in Duval County, Florida.

5.  At all times material to this cause, State Farm's insured, Mary Laseter, was a resident of and domiciled in Duval County, Florida.

6.  Upon information and belief, State Farm is a foreign corporation with its principal place of business in Bloomington, Illinois. At all times material to this cause State Farm maintains offices in Florida, was licensed to sell and actively engaged in the business of selling insurance in Florida.

7.  The Policy: State Farm issued a Florida automobile insurance policy to Mary Laseter, Policy No. 649993459C covering a 2008 Honda CR-V that was in effect as of July 29, 2021. A copy of the policy is attached as Exhibit "A." The Policy provided bodily injury limits of $25,000 per person and $50,000 per occurrence.

8.  Under the terms of the Policy and the obligations placed on it by Florida law, State Farm was required to use the Policy's limits to settle Mrs. Mills' claim against Mary Laseter.

9.  The subject collision: On July 29, 2021, Mary Laseter negligently operated her 2008 Honda CR-V causing a high energy frontal offset collision with the Plaintiff Amber Mills' vehicle resulting in airbag deployments and totaling both vehicles ("subject collision").

10. Mrs. Mills suffered significant injuries to her head, shoulder, right hand and a permanent injury to her C6-7 disc and corresponding nerves as well as related losses as a result of the subject collision. The value of these damages clearly exceeded the Policy's coverage limits.

11. On February 18, 2022, Mrs. Mills, through counsel, sent a letter with supporting

documentation to State Farm and requested tender of the $25,000 policy limits in exchange for a release of all claims against Mary Laseter arising out of the collision.

12. State Farm chose not to settle the claim and, prior to an extended deadline, offered the Plaintiff $6,550 and then $7,000 to settle all claims by Mills.

13. State Farm failed and/or refused to settle Mrs. Mills' claim.

14. Upon information and belief, State Farm failed to timely advise Mrs. Laseter of the settlement opportunities or discuss with her the ramifications of declining or ignoring them.

15. Due to State Farm's failure to settle Mrs. Mills' claim for the policy limits, Mrs. Mills was forced to file a lawsuit against Mrs. Laseter ("the lawsuit").

16. Due to State Farm's refusal to make timely and adequate settlement offers, the lawsuit proceeded to trial on February 13, 2023, resulting in a jury verdict of $245,782 exclusive of taxable costs and interest.

17. Due to State Farm's refusal to make timely and adequate settlement offers, Mrs. Laseter, now 91 years old, is exposed to a personal judgment far in excess of her available auto liability bodily injury protection limits of $25,000.

18. All conditions precedent to bringing this action have been performed or have otherwise occurred including but not limited to an Assignment of Rights as to any and all claims from Laseter to Mills.

19. Mrs. Mills has engaged the undersigned counsel to represent her interests in this cause of action and agreed to pay a reasonable fee for services rendered.

## COUNT I - COMMON LAW BAD FAITH

20. Plaintiff re-alleges and reaffirms the allegations contained in paragraphs 1-19 and further alleges:

21. State Farm had a duty to use the same degree of care and diligence in the investigation and resolution of Mrs. Mills' claim against Mrs. Laseter as a person of ordinary care and prudence would exercise in the management of their business and to fairly evaluate Mrs. Mills' claim against Mrs. Laseter.

22. State Farm had a duty to keep its insured informed, including a duty to advise its insured of the possibility of an excess judgment, the probable outcome of litigation, and all settlement opportunities.

23. State Farm had a fiduciary duty to protect its insured Laseter and to refrain from a business practice which elevated its own financial interests ahead of that of its insured.

24. State Farm was provided with an opportunity to settle Mrs. Mills claim against Mrs. Laseter for the $25,000 policy limits and, squandered that opportunity by making insufficient counteroffers for substantially less than Mrs. Mills' damages and/or by failing to timely tender its minimal policy limits in exchange for a release as to its insured.

25. Defendant, State Farm further owed a duty to its insured Laseter, and the public at large to refrain from engaging in unfair claim settlement practices such as systemically presenting low and clearly unsatisfactory settlement offers on Florida claims including this one during the COVID-19 pandemic when it knew that victims of auto negligence were suffering from hardships caused by the novel coronavirus so as to increase its profits.

26. State Farm breached its fiduciary duties to Mrs. Laseter by failing to settle Mrs. Mills' claim within the policy limits when State Farm could and should have done so, had they acted fairly and honestly and with due regard for Mrs. Laseter's interests.

27. State Farm further breached its fiduciary duties to Mrs. Laseter by failing to timely and adequately advise its insured of the possibility of an excess judgment, the probable outcome

of litigation, and the opportunity of settlement.

28. As a direct and proximate result of State Farm's breach of its duties under the Policy, Mrs. Laseter has suffered and continues to suffer damages in the form of the Final Judgment, interest and any additional consequential damages flowing therefrom.

29. Mrs. Mills continues to suffer damages as a judgment creditor to Mrs. Laseter.

WHEREFORE, Mrs. Mills demands judgment against State Farm for all damages, including unsatisfied amounts of the Amended Final Judgment, pre- and post-judgment interest on the Amended Final Judgment, attorney's fees and costs related to this action, and any other relief permitted under Florida law or that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, AMBER MILLS, hereby demands trial by jury on all issues as set forth herein.

**BUTLER LAW GROUP**

/s/ *Howard Butler*
**HOWARD G. BUTLER, ESQ.**
Florida Bar No. 0503487
**DREW W. BASKIN, ESQ.**
Florida Bar No. 0109388
Attorneys for the Plaintiff
1506 Prudential Drive
Jacksonville, FL 32207
(904) 398-2308
(904) 398-3000 (facsimile)
hgb@butlerlawgroup.net
dwb@butlerlawgroup.net
paralegal@butlerlawgroup.net

# EXHIBIT "A"



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Florida**
Policy Form 9810A

# CONTENTS

**THIS POLICY** .................................................. 3

**DEFINITIONS** ................................................... 4

**LIABILITY COVERAGE (Bodily Injury and Property Damage)** ......................... 6

  Additional Definition ........................................ 6
  Insuring Agreement .......................................... 7
  Supplementary Payments ................................... 7
  Limits ............................................................. 7
  Nonduplication ................................................ 8
  Exclusions ...................................................... 8
  If Other Liability Coverage Applies .................... 9
  Required Out-of-State Liability Coverage ....... 10
  Financial Responsibility Certification ............. 10

**PROPERTY DAMAGE LIABILITY COVERAGE** ............................................. 10

  Additional Definition ...................................... 10
  Insuring Agreement ........................................ 11
  Supplementary Payments ................................ 11
  Limit ............................................................ 11
  Exclusions .................................................... 12
  If Other Property Damage Liability Coverage Applies .......................................... 13
  Required Out-of-State Liability Coverage ....... 14
  Financial Responsibility Certification ............ 14

**NO-FAULT COVERAGE** ............................... 14

  Additional Definition ...................................... 14
  Insuring Agreement ........................................ 14
  Limits ........................................................... 15
  Application of Any Deductible and Workers' Compensation Offset ..................................... 17
  Partial Payment or Rejection of a Claim ......... 17
  Nonduplication .............................................. 17
  Exclusions .................................................... 17
  If Other No-Fault Coverage Applies ............... 18
  Our Payment Options ..................................... 18

**MEDICAL PAYMENTS COVERAGE** ............ 18

  Additional Definition ...................................... 18
  Insuring Agreement ........................................ 19
  Determining Medical Expenses ....................... 20
  Limits ........................................................... 20
  Nonduplication .............................................. 21
  Exclusions .................................................... 21
  If Other Medical Payments Coverage or Similar Vehicle Insurance Applies ................. 23
  Our Payment Options ..................................... 24

**UNINSURED MOTOR VEHICLE COVERAGE (Stacking)** ................................. 24

  Additional Definitions .................................... 24
  Insuring Agreement ........................................ 25
  Consent to Settlement .................................... 25
  Deciding Fault and Amount ............................. 25
  Limits ........................................................... 25
  Nonduplication .............................................. 26
  Exclusions .................................................... 26
  If Other Uninsured Motor Vehicle Coverage Applies ......................................................... 26
  Our Payment Options ..................................... 26

**UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)** ......................... 27

  Additional Definitions .................................... 27
  Insuring Agreement ........................................ 27
  Consent to Settlement .................................... 27
  Deciding Fault and Amount ............................. 28
  Limits ........................................................... 28
  Nonduplication .............................................. 28
  Exclusions .................................................... 28
  If Other Uninsured Motor Vehicle Coverage Applies ......................................................... 29
  Our Payment Options ..................................... 30

**PHYSICAL DAMAGE COVERAGES** ........... 30

  Additional Definitions .................................... 30
  Insuring Agreements ...................................... 31
  Supplementary Payments – Comprehensive Coverage and Collision Coverage .................. 32
  Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage .................. 32
  Limits – Car Rental and Travel Expenses Coverage ...................................................... 33
  Nonduplication .............................................. 34
  Exclusions .................................................... 34
  If Other Physical Damage Coverage or Similar Coverage Applies ............................... 35
  Financed Vehicle .......................................... 36
  Our Payment Options ..................................... 36

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ...................... 36

Additional Definition ........................................ 36
Insuring Agreement .......................................... 36
Benefit ................................................................ 36
Exclusions ......................................................... 37
Our Payment Options ....................................... 38

**INSURED'S DUTIES** .......................................... 38

Insured's Duty at the Time of an Accident or Loss ............................................................ 38
Notice to Us of an Accident or Loss ................ 38
Notice to Us of a Claim or Lawsuit ................. 38
Insured's Duty to Cooperate With Us .............. 38
Questioning Under Oath ................................... 38
Other Duties Under the Physical Damage Coverages ......................................... 39
Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage ............................. 39

**GENERAL TERMS** ........................................... 40

When Coverage Applies ................................... 40
Where Coverage Applies .................................. 40
Limited Coverage in Mexico ............................ 40
Persons Acting On Our Behalf ......................... 41
Newly Owned or Newly Leased Car ............... 42
Changes to This Policy ..................................... 42
Premium ............................................................ 42
Renewal ............................................................ 43
Nonrenewal ....................................................... 43
Cancellation ...................................................... 43
Assignment ....................................................... 44
Bankruptcy or Insolvency of the Insured ........ 44
Concealment or Fraud ...................................... 44
Our Right to Recover Our Payments ............... 45
Mediation .......................................................... 45
Arbitration ........................................................ 46
Legal Action Against Us .................................. 46
Choice of Law .................................................. 48
Severability ...................................................... 48

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSE-MENTS" on the Declarations Page, in reliance on the following statements:

      (1) *You* are the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

         (a) a license to drive; or

         (b) a vehicle registration

         suspended, revoked, or refused.

      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary.

3

9810A

Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

# DEFINITIONS

**We** define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

**Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it.

**Car** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. **Car** does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

**Car Business** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

**Emergency Medical Condition** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

**Fungi** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

    a. Mycotoxins;

    b. Spores;

    c. Scents; or

    d. Byproducts.

**Medical Expenses** means **reasonable charges** incurred for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including **medically necessary** prosthetic devices and **medically necessary** ambulance, hospital, and nursing services.

**Medical Expenses** do not include any:

1. massage as defined in s. 480.033, Florida Statutes;

2. acupuncture as defined in s. 457.102, Florida Statutes;

3. services, care, treatment, or supplies provided by any massage therapist; or

4. services, care, treatment, or supplies provided by any acupuncturist.

**Medically Necessary** means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other healthcare provider.

**Motor Vehicle** means a vehicle with four or more wheels that:

1. is self-propelled and is of a type:

    a. designed for; and

    b. required to be licensed for use on Florida highways; or

2. is a trailer or semitrailer designed for use with a vehicle described in 1. above.

**Motor Vehicle** does not include:

1. a mobile home; or

2. any motor vehicle which is:

    a. used in mass transit, other than public school transportation;

    b. designed to transport more than five passengers, exclusive of the operator; and

4

9810A

c. *owned by* a municipality, a transit authority, or a political subdivision of the state.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*No-Fault Act* means the Florida Motor Vehicle No-Fault Law and any amendments.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:
   a. *you*;
   b. any *resident relative*;
   c. any other *person* who resides primarily in *your* household; or
   d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
   a. *you*; or
   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 6 months or more, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motor vehicle; or

2. a vehicle designed to be pulled by a motor vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:
   a. while not used for:
      (1) wholesale; or
      (2) retail
      pickup or delivery; and
   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Reasonable Charge*, which includes reasonable expense, means an amount determined by *us* to be reasonable in accordance with the *No-Fault Act*, considering one or more of the following:

1. usual and customary charges;

2. payments accepted by the provider;

3. reimbursement levels in the community;

4. various federal and state medical fee schedules applicable to *motor vehicle* and other insurance coverages;

5. the schedule of maximum charges in the *No-Fault Act*,

6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or

7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

*Relative* means a relative of any degree by blood or marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

5

9810A

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. a trailer:

   a. designed to be pulled by a *private passenger car*;

   b. not designed to carry *persons*; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE (Bodily Injury and Property Damage)

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

   (1) that part of the damages *we* pay; or

   (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

   (1) an arbitration;

   (2) a mediation; or

   (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *person* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *persons* as a direct result of that *bodily injury*.

7
9810A

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *persons* who sustained damages or emotional distress in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

    a. *YOU*;
    b. *RESIDENT RELATIVES*; AND
    c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

        (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR
        (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees, or if this coverage, of this policy, is used to certify financial responsibility;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

    a. *you*;
    b. any *resident relative*; or
    c. any agent, employee, or business partner of a. or b. above

    while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;
    b. RENTED TO;
    c. USED BY;
    d. IN THE CARE OF; OR
    e. TRANSPORTED BY

*YOU*, A **RESIDENT RELATIVE**, OR THE **PERSON** WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle **owned by** the employer of *you* or any **resident relative** if such damage is caused by an **insured** while operating another motor vehicle;

b. residence while rented to or leased to an **insured**; or

c. private garage while rented to or leased to an **insured**;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. WHILE USING A **TRAILER** WITH A MOTOR VEHICLE IF THAT **INSURED** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If liability coverage provided by this policy and one or more other Car Policies issued to *you* or any **resident relative** by the **State Farm Companies** apply to the same accident, then:

a. the liability coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any **resident relative** by the **State Farm Companies** that provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to *you* or any **resident relative** by the **State Farm Companies** provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any **resident relative** by the **State Farm Companies** that provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

9
9810A

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b.  If:

   (1)  more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as excess coverage; and

   (2)  liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1.  an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2.  this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PROPERTY DAMAGE LIABILITY COVERAGE

This policy provides Property Damage Liability Coverage if "B" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1.  *you* and *resident relatives* for:

   a.  the ownership, maintenance, or use of:

      (1)  *your car*;

      (2)  a *newly acquired car*; or

      (3)  a *trailer*; and

   b.  the maintenance or use of:

      (1)  a *non-owned car*; or

      (2)  a *temporary substitute car*;

2.  the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household,

but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3.  any other *person* for his or her use of:

   a.  *your car*;

   b.  a *newly acquired car*;

   c.  a *temporary substitute car*; or

   d.  a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission; and

4.  any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of damage to property caused by an accident that involves a vehicle for which that *insured* is provided Property Damage Liability Coverage by this policy;

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Property Damage Liability Coverage.

3. *We* will only defend an *insured* in a claim or lawsuit for damages payable under this policy's Property Damage Liability Coverage, that are caused by an accident for which that *insured* is provided Property Damage Liability Coverage by this policy. If a claim or lawsuit seeks damages due to both property damage and *bodily injury*, then *we* will only defend the *insured* for property damage, and the *insured* will be required to hire and pay attorneys to defend the *insured* for damages due to *bodily injury*.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Property Damage Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

2. Court costs awarded by the court against an *insured* and resulting from that part of a lawsuit:

   a. that seeks damages payable under this policy's Property Damage Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Property Damage Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Property Damage Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Property Damage Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Property Damage Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limit**

The Property Damage Liability Coverage limit for damage to property is shown on the Declarations Page under "Property Damage Liability Coverage – Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

The Property Damage Liability Coverage limit is the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES DAMAGE TO PROPERTY;
2. FOR *BODILY INJURY*;
3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
6. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

    a. *you*;
    b. any *resident relative*; or
    c. any agent, employee, or business partner of a. or b. above

    while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

7. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
8. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

9. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;
    b. RENTED TO;
    c. USED BY;
    d. IN THE CARE OF; OR
    e. TRANSPORTED BY

    *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

    a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;
    b. residence while rented to or leased to an *insured*;
    c. private garage while rented to or leased to an *insured*.

10. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
11. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;
12. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

    a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (12.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

13. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Property Damage Liability Coverage Applies**

1. If property damage liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the property damage liability coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Property Damage Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also

   applies as primary coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Property Damage Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as excess coverage.

13
9810A

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## NO-FAULT COVERAGE

This policy provides No-Fault Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol shown on the Declarations Page with the SCHEDULE in the Limits section. The Income Loss option *you* have selected is shown by *your* coverage symbol.

**Additional Definition**

*Insured* means:

1. named insureds and *relatives*:

   a. while *occupying* a *motor vehicle*;

   b. struck as a *pedestrian* by a *motor vehicle*; or

2. any other *person* while *occupying* or *struck* as a *pedestrian* by:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

**Insuring Agreement**

*We* will pay in accordance with the *No-Fault Act* properly billed and documented *reasonable charges* for *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle* as follows:

1. **Medical Expenses**

   *We* will pay 80% of properly billed and documented *medical expenses*, but only if that *insured* receives initial services and care from a provider described in A. below within 14 days

after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

*We* will not pay for any *medical expenses* if that *insured* does not receive initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

*We* will only pay *medical expenses* for:

A. initial services and care:

   (1) lawfully provided, supervised, ordered or prescribed by:

      (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (b) a dentist licensed under chapter 466 of the Florida Statutes; or

      (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

   (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

   (3) provided by a *person* or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

(1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

(2) a dentist licensed under chapter 466 of the Florida Statutes;

(3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

(4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above;

    (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

    (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

    (a) has a medical director licensed under chapter 458, chapter 459,

    or chapter 460 of the Florida Statutes;

    (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

    (c) provides at least four of the following medical specialties:

        i. general medicine;

        ii. radiography;

        iii. orthopedic medicine;

        iv. physical medicine;

        v. physical therapy;

        vi. physical rehabilitation;

        vii. prescribing or dispensing outpatient prescription medication; or

        viii. laboratory services.

2. **Income Loss**

*We* will pay, when properly documented, 60% of any loss of gross income and loss of earnings capacity per individual injured *insured* from that *insured's* inability to work that is proximately caused by the injury sustained by that individual *insured*.

3. **Replacement Services Loss**

*We* will pay, when properly documented, *reasonable charges* incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the individual injured *insured* would have performed without income for the benefit of his or her household.

4. **Death Benefits**

*We* will pay $5,000 per deceased individual *insured*.

**Limits**

1. *We* will not pay any charge that the *No-Fault Act* does not require *us* to pay, or the amount of any charge that exceeds the amount the *No-Fault Act* allows to be charged.

2. The most *we* will pay for each injured *insured* as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss**, described in the **Insuring Agreement** of this policy's No-Fault Coverage.

15
9810A

The limit for **Medical Expenses** is $10,000 if a physician (excluding a chiropractic physician), a dentist, a physician assistant, or an advanced registered nurse practitioner described in 1.A. or 1.B under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* had an *emergency medical condition*.

The limit for **Medical Expenses** is $2,500 if any healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* did not have an *emergency medical condition*.

*We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, then *we* will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3. *We* will pay a **Death Benefit** of $5,000 per deceased individual *insured*. **Death Benefits** are in addition to the **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** limit.

4. SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For Named Insureds | Income Loss Benefits Eliminated For Named Insureds' Dependent *Relatives* |
|---|---|---|
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

**Application of Any Deductible and Workers' Compensation Offset**

1. The deductible amount, if any, is shown on the Declarations Page beside *your* coverage symbol. The deductible amount does not apply to **Death Benefits**.

   The deductible amount applies to:

   a. each named insured if "N" follows the deductible amount; or

   b. each named insured and each dependent *relative* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of properly billed and documented **Medical Expenses**, properly documented **Income Loss**, and properly documented **Replacement Services Loss** that are eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable documented proof of the expenses and losses and the amount of expenses and losses incurred.

2. After any applicable deductible has been applied, *we* will pay the balance of properly billed and documented **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** in accordance with the percentages and limits as described in the section titled **Limits**.

3. *We* will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

**Partial Payment or Rejection of a Claim**

If *we* pay only a portion of a claim or reject a claim due to an alleged error in the claim, then *we* shall, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the *person* making the claim, at the *person's* option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

In a dispute between the *insured* and *us*, or between an assignee of the *insured's* rights and *us*, upon request, *we* will notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**Nonduplication**

*We* will not pay under No-Fault Coverage any benefits:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under other no-fault coverage, any disability benefits law, or similar law; or

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. **BODILY INJURY** TO:

   a. ANY **PEDESTRIAN** NOT A RESIDENT OF FLORIDA; OR

   b. ANY **PERSON** ENTITLED TO NO-FAULT BENEFITS FROM:

      (1) THE OWNER OF A **MOTOR VEHICLE** OTHER THAN A NAMED INSURED; OR

      (2) THAT OWNER'S INSURER.

   This exclusion (1.) does not apply to any named insured or any *relative*;

2. ANY NAMED INSURED OR **RELATIVE** WHO SUSTAINED **BODILY INJURY** WHILE **OCCUPYING** A **MOTOR VEHICLE OWNED BY** THE NAMED INSURED AND NOT INSURED UNDER THIS POLICY;

3. ANY **INSURED PERSON**:

   a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER **BODILY INJURY** UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

      (1) CAUSING **BODILY INJURY** TO HIMSELF OR HERSELF INTENTIONALLY; OR

      (2) WHILE COMMITTING A FELONY;

   b. WHOSE **BODILY INJURY** OCCURRED WHILE:

(1) DRIVING *YOUR CAR* OR A *NEW-LY ACQUIRED CAR* WITHOUT *YOUR* PERMISSION; OR

(2) *OCCUPYING* A *MOTOR VEHICLE* LOCATED FOR USE AS A DWELL-ING OR PREMISES;

c. WHO OWNS A *MOTOR VEHICLE* SUB-JECT TO THE *NO-FAULT ACT.* This ex-clusion (3.c.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car* if the accident occurs outside Florida; OR

d. WHO REFUSES TO:

(1) SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAM-INATION UNDER OATH; OR

(2) PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

4. INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL;

5. ANY MASSAGE AS DEFINED IN S. 480.033, FLORIDA STATUTES, OR ACU-PUNCTURE AS DEFINED IN S. 457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

6. ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other No-Fault Coverage Applies**

1. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily in-jury*, then:

a. the No-Fault Coverage limits of such poli-cies shall not be added together to deter-mine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single high-est applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by one or more sources other than the *State Farm Com-panies* apply to the same *bodily injury*, then:

a. the No-Fault Coverage limits of such poli-cies shall not be added together to deter-mine the most that may be paid;

b. the maximum amount that may be paid from all such policies combined is the single high-est applicable limit provided by any one of the policies, subject to *our* pro rata share of the highest applicable limit provided by any one of the policies; and

c. *we* are entitled to recover from each insur-er that is liable to pay no-fault coverage benefits to or for the *insured* who sus-tained *bodily injury*, an equitable pro rata share of benefits paid and expenses in-curred in processing the claim.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such pay-ment;

5. Any *person* or organization that provides the medical services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Dec-larations Page.

**Additional Definition**

*Insured* means named insureds and *relatives*:

1. while *occupying* a *motor vehicle*;

2. through being struck as a *pedestrian* by a *mo-tor vehicle*; or

3. through being struck as a *pedestrian* by a mo-torcycle of a type required to be licensed for use on Florida highways.

**Insuring Agreement**

1. Medical Payments Coverage is excess over No-Fault Coverage. The no-fault deductible, if any, is not payable under Medical Payments Coverage.

2. *We* will pay properly billed and documented *medical expenses* for services and care that are incurred because of *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle*, but only:

   a. if that *insured* receives initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*; and

   b. if such services and care are provided within three years after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will not pay for any *medical expenses* if the *insured* does not receive initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will only pay *medical expenses* for:

   A. initial services and care:

      (1) lawfully provided, supervised, ordered or prescribed by:

         (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

         (b) a dentist licensed under chapter 466 of the Florida Statutes; or

         (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

      (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

      (3) provided by a *person* or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

   B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

      (1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (2) a dentist licensed under chapter 466 of the Florida Statutes;

      (3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

      (4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above;

         (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

         (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

   C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

      (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

      (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

      (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

      (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

      (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

         (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

19
9810A

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i.   general medicine;

    ii.  radiography;

    iii. orthopedic medicine;

    iv. physical medicine;

    v.  physical therapy;

    vi. physical rehabilitation;

    vii. prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

3. *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

    to determine if the incurred expenses are *reasonable charges* and *medically necessary* for the *bodily injury* sustained.

2. use a medical examination of the *insured* to determine if:

    a.  the *bodily injury* was caused by a *motor vehicle* accident; and

    b.  the expenses incurred are *medically necessary*.

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

The Medical Payments Coverage limit is dependent upon determination of an *emergency medical condition* and is shown on the Declarations Page.

1. **Emergency Medical Condition**

    a.  The Medical Payments Coverage limit for an *insured* who has been determined to have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if that insured has been determined to have an *emergency medical condition* by a physician, a dentist, a physician assistant, or an advanced registered nurse practitioner described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage regardless of the number of:

        (1) *insureds*;

        (2) claims made;

        (3) vehicles insured; or

        (4) vehicles involved in the accident.

    b.  Subject to the limit shown on the Declarations Page, as described in 1.a. above, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

2. **Not An Emergency Medical Condition**

    The Medical Payments Coverage limit for an *insured* who has been determined to not have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Not An Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the *insured* has been determined to not have an *emergency medical condition* by a healthcare provider described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, regardless of the number of:

    a.  *insureds*;

    b.  claims made;

    c.  vehicles insured; or

    d.  vehicles involved in the accident.

3. In no event will *we* pay more than the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-sub-subparagraph, then *we* will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**Nonduplication**

*We* will not pay under Medical Payments Coverage any damages or expenses:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*; or

2. that have already been paid under No-Fault Coverage or Uninsured Motor Vehicle Coverage of this policy, the no-fault coverage, medical payments coverage, or uninsured motor vehicle coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED. This does not apply to the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

2. WHO REFUSES TO:

   a. SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

   b. PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

3. FOR ANY *MEDICAL EXPENSES* THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE. This does not include:

   a. the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

b. *medical expenses* not paid because the medical expense benefits of all no-fault coverage available from all sources have been exhausted;

c. *medical expenses* for *bodily injury* while *occupying* a *non-owned car* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; and

d. *medical expenses* for *bodily injury* sustained through being struck as a *pedestrian* by a:

   (1) *motor vehicle* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; or

   (2) motorcycle of a type required to be licensed for use on Florida highways;

4. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

5. FOR ANY INTEREST CHARGES;

6. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

7. WHO:

   a. IS *OCCUPYING* OR THROUGH BEING STRUCK AS A PEDESTRIAN BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

   b. AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

   This exclusion (7.b.) does not apply to:

   (1) any named insured;

   (2) the spouse of any named insured; and

   (3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

9. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

10. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. any named insured;

   b. any *relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

11. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

12. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

13. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

14. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

15. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

16. WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

17. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

18. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (18.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

19. FOR ANY MASSAGE AS DEFINED IN S.480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S.457.102, FLORIDA STATUTES, REGARDLESS OF THE ***PERSON*** OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

20. FOR ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An ***insured*** shall not recover for the same ***medical expenses*** or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any ***relative*** by the ***State Farm Companies*** apply to the same ***bodily injury***, then:

    a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an ***insured*** who sustains ***bodily injury*** while ***occupying your car*** or a ***trailer*** attached to it.

    a. If:

        (1) this is the only vehicle policy issued to any named insured or any ***relative*** by the ***State Farm Companies*** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

    then ***we*** will pay the proportion of ***medical expenses*** and funeral expenses payable as primary that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

    b. If:

        (1) more than one vehicle policy issued to any named insured or any ***relative*** by the ***State Farm Companies*** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

    then the ***State Farm Companies*** will pay the proportion of ***medical expenses*** and funeral expenses payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

    a. If:

        (1) this is the only vehicle policy issued to any named insured or any ***relative*** by the ***State Farm Companies*** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b.  If:

(1)  more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2)  medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4.  A *person* authorized by law to receive such payment;

5.  Any *person* or organization that provides the *medically necessary* services or funeral services; or

6.  Any *person* appearing to *us* to be equitably entitled to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1.  *you*;

2.  *resident relatives*;

3.  any other *person* while *occupying*:

   a.  *your car*;

   b.  a *newly acquired car*;

   c.  a *temporary substitute car*; or

   d.  a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission.  Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4.  any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1.  the ownership, maintenance, and use of which is:

   a.  neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b.  insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1)  the limits are less than required by the financial responsibility act of the state of Florida;

      (2)  the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3)  the entity providing the financial responsibility:

         (a)  denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b)  is or becomes insolvent; or

2. the owner or driver:

    a. of which could not reasonably have been identified;

    b. remains unknown; and

    c. that causes *bodily injury* to the *insured*.

***Uninsured Motor Vehicle*** does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an ***uninsured motor vehicle*** for ***bodily injury*** sustained by *you* or a ***resident relative*** while the vehicle is being operated by a ***person*** other than *you* or a ***resident relative***;

2. ***owned by***, rented to, or furnished or available for the regular use of *you* or a ***resident relative***;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for ***bodily injury*** an *insured* is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***.

2. The ***bodily injury*** for which *we* will pay compensatory damages must be:

    a. sustained by an *insured*;

    b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle***; and

    c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the ***uninsured motor vehicle***, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

    a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the ***uninsured motor vehicle***; and

    b. any recovery from or on behalf of the owner or driver of the ***uninsured motor vehicle*** shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

    a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the ***uninsured motor vehicle***?

    b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the ***uninsured motor vehicle***?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from ***bodily injury*** to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that ***bodily injury***.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from ***bodily injury*** to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

3. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* sustained by a *person* other than *you* or any *resident relative*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   If uninsured motor vehicle coverage is provided on a primary basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.

   If uninsured motor vehicle coverage is provided on an excess basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as excess coverage.

4. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then *we* may choose one or more policies from which to make payment.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Non-Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U3" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

***Insured*** means:

1. ***you***;
2. ***resident relatives***;
3. any other ***person*** while ***occupying***:

   a. ***your car***;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a trailer attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used with ***your*** express or implied permission. Such other ***person occupying*** a vehicle used to carry ***persons*** for a charge is not an ***insured***; and

4. any ***person*** entitled to recover compensatory damages as a result of ***bodily injury*** to an ***insured*** as defined in 1., 2., and 3. above.

***Uninsured Motor Vehicle*** means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of the state of Florida;

      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for ***bodily injury*** sustained by the ***insured***; or

      (3) the entity providing the financial responsibility:

         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b) is or becomes insolvent; or

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

   c. that causes ***bodily injury*** to the ***insured***.

***Uninsured Motor Vehicle*** does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an ***uninsured motor vehicle*** for ***bodily injury*** sustained by ***you*** or a ***resident relative*** while the vehicle is being operated by a ***person*** other than ***you*** or a ***resident relative***;

2. ***owned by***, rented to, or furnished or available for the regular use of ***you*** or a ***resident relative***;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***.

2. The ***bodily injury*** for which ***we*** will pay compensatory damages must be:

   a. sustained by an ***insured***;

   b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle***; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The ***insured*** must inform ***us*** of a settlement offer, if any, proposed by or on behalf of the owner or driver of the ***uninsured motor vehicle***, and the ***insured*** must request ***our*** written consent to accept such settlement offer.

If ***we***:

1. consent in writing, then the ***insured*** may accept such settlement offer.

2. inform the ***insured*** in writing that ***we*** do not consent, then the ***insured*** may not accept such settlement offer and:

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the **State Farm Companies** to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN ***INSURED*** WHO, WITHOUT ***OUR*** WRITTEN CONSENT, SETTLES WITH ANY ***PERSON*** OR ORGANIZATION WHO MAY BE LIABLE FOR THE ***BODILY INJURY***;

2. FOR AN ***INSURED*** WHO SUSTAINS ***BODILY INJURY***:

   a. WHILE ***OCCUPYING*** A VEHICLE ***OWNED BY YOU*** OR ANY ***RESIDENT RELATIVE*** IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***; OR

   b. THROUGH BEING STRUCK BY A VEHICLE ***OWNED BY*** ANY ***RESIDENT RELATIVE***.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* one or both of them;

3. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW,

DISABILITY BENEFITS LAW, OR SIM-ILAR LAW; OR

   c.  ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

4.  FOR PUNITIVE OR EXEMPLARY DAM-AGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1.  If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a.  the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b.  the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2.  The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   a.  If:

     (1)  this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

     (2)  uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

   b.  If:

     (1)  more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Un-insured Motor Vehicle Coverage which applies to the accident as pri-mary coverage; and

     (2)  uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as pri-mary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other un-insured motor vehicle coverage that apply as primary coverage.

3.  Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this poli-cy applies as excess coverage.

   a.  If:

     (1)  this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as ex-cess coverage; and

     (2)  uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then *we* will pay the proportion of damag-es payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as ex-cess coverage.

   b.  If:

     (1)  more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

     (2)  uninsured motor vehicle coverage pro-vided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as ex-cess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other un-insured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

***We*** may, at ***our*** option, make payment to one or more of the following:

1. The ***insured***;

2. The ***insured's*** surviving spouse;

3. A parent or guardian of the ***insured***, if the ***insured*** is a minor or an incompetent ***person***; or

4. A ***person*** authorized by law to receive such payment.

# PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

***Covered Vehicle*** means:

1. ***your car***;

2. a ***newly acquired car***;

3. a ***temporary substitute car***;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a ***non-owned car*** while it is:

   a. being driven by an ***insured***; or

   b. in the custody of an ***insured*** if at the time of the ***loss*** it is:

      (1) not being driven; or

      (2) being driven by a ***person*** other than an ***insured*** and being ***occupied*** by an ***insured***;

6. a ***non-owned trailer*** while it is being used by an ***insured***; and

7. a ***non-owned camper*** while it is being used by an ***insured***;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of ***trailers*** and campers must be securely fixed as a permanent part of the ***trailer*** or camper.

***Daily Rental Charge*** means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

***Insured*** means ***you*** and ***resident relatives***.

***Loss*** means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a ***covered vehicle***. ***Loss*** does not include any reduction in the value of any ***covered vehicle*** after it has been repaired, as compared to its value before it was damaged.

***Loss Caused By Collision*** means a ***loss*** caused by:

1. a ***covered vehicle*** hitting or being hit by another vehicle or another object; or

2. the overturning of a ***covered vehicle***.

Any ***loss*** caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a ***Loss Caused By Collision***.

***Non-Owned Camper*** means a camper designed to be mounted on a pickup truck that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

   a. an ***insured***;

   b. any other ***person*** who resides primarily in ***your*** household; or

   c. an employer of any ***person*** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the ***loss***.

***Non-Owned Trailer*** means a ***trailer*** that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

   a. an ***insured***;

b. any other **person** who resides primarily in **your** household; or

c. an employer of any **person** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an **insured** during any part of each of the 31 or more consecutive days immediately prior to the date of the **loss**.

**Insuring Agreements**

1. **Comprehensive Coverage**

   a. **We** will pay for **loss**, except **loss caused by collision**, to a **covered vehicle**.

   b. **We** will pay transportation expenses incurred by an **insured** as a result of the total theft of **your car** or a **newly acquired car**. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date **you** report the theft to **us**; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to **your** possession in a drivable condition;

            (ii) the date **we** offer to pay for the **loss** if the vehicle has not yet been recovered; or

            (iii) the date **we** offer to pay for the **loss** if the vehicle is recovered, but is a total loss as determined by **us**; and

      (2) during the period that:

         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to **your** possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

         (b) ends on the date the vehicle is repaired.

      These transportation expenses must be reported to **us** before **we** will pay such incurred expenses.

   c. The deductible does not apply to damage to the windshield of any **covered vehicle**.

2. **Collision Coverage**

   **We** will pay for **loss caused by collision** to a **covered vehicle**.

3. **Emergency Road Service Coverage**

   **We** will pay the fair cost incurred by an **insured** for:

a. up to one hour of labor to repair a **covered vehicle** at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a **covered vehicle** is not drivable;

c. towing a **covered vehicle** out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a **covered vehicle** to driving condition. **We** do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a **covered vehicle** if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      **We** will pay the **daily rental charge** incurred when an **insured** rents a **car** from a **car business** while **your car** or a **newly acquired car** is:

      (1) not drivable; or

      (2) being repaired

      as a result of a **loss** which would be payable under Comprehensive Coverage or Collision Coverage.

      **We** will pay this **daily rental charge** incurred during a period that:

      (1) starts on the date:

         (a) the vehicle is not drivable as a result of the **loss**; or

         (b) the vehicle is left at a repair facility if the vehicle is drivable; and

      (2) ends on the earliest of:

         (a) the date the vehicle has been repaired or replaced;

         (b) the date **we** offer to pay for the **loss** if the vehicle is repairable but **you** choose to delay repairs; or

         (c) seven days after **we** offer to pay for the **loss** if the vehicle is:

            (i) a total loss as determined by **us**; or

            (ii) stolen and not recovered.

      The amount of any such **daily rental charge** incurred by an **insured** must be reported to **us** before **we** will pay such amount.

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or

the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by mediation or appraisal. Either the owner or *we* may request mediation or appraisal.

(2) Mediation will follow the rules outlined in this policy, found under **Mediation**, in the section titled **GENERAL TERMS**.

(3) Appraisal will follow the rules and procedures as listed below:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(4) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

    (1)  WEAR AND TEAR;

    (2)  FREEZING; OR

    (3)  MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

    OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the **loss** is the result of theft of the **covered vehicle**;

14. ANY PART OR EQUIPMENT:

   a.  THAT IS NOT LEGAL FOR USE IN OR ON THE **COVERED VEHICLE** IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED; OR

   b.  THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE **COVERED VEHICLE**.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the **covered vehicle**, then **we** will pay the cost that **we** would otherwise have paid to repair the vehicle with the legal version of the part or equipment. **We** will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

   a.  **loss** is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

   b.  **loss caused by collision** to another part of the **covered vehicle** causes **loss** to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

   a.  DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

   b.  **OWNED BY** AN **INSURED**; AND

   c.  NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY **COVERED VEHICLE** WHILE IT IS:

   a.  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same **loss** or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that **loss** or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an **insured** by the **State Farm Companies** apply to the same **loss** or expense, then only one policy applies. **We** will select a policy that pays the most for the **loss** or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a **loss** to **your car**.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same **loss** or expense, then the **State Farm Companies** will pay the proportion of the **loss** or expense payable as primary that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same **loss** or expense, then the **State Farm Companies** will pay the proportion of the **loss** or expense payable as excess that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

   (1) *You*;
   (2) The repairer; or
   (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

   (1) *You*;
   (2) The owner of such vehicle;
   (3) The repairer; or
   (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;
   b. The *insured* who incurred the expense; or
   c. Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or
2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

36
9810A

**Death, Dismemberment and
Loss of Sight Benefits Schedules**

If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1.  WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2.  WHILE *OCCUPYING*, LOADING, OR UN-LOADING:

    a.  AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

    b.  A VEHICLE, OTHER THAN AN EMER-GENCY VEHICLE, WHILE USED IN THE:

        (1)  *INSURED'S* BUSINESS; OR

        (2)  COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

        This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

    c.  A MILITARY VEHICLE; OR

    d.  A VEHICLE WHILE IT IS:

        (1)  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CON-TEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

        (2)  ON A TRACK DESIGNED PRIMARI-LY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3.  WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PE-DESTRIAN* BY:

    a.  A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

    b.  A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

    c.  A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4.  FOR DEATH, DISMEMBERMENT, AND LOSS OF SIGHT THAT RESULTS FROM:

    a.  WAR OF ANY KIND;

    b.  NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINA-TION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

    c.  EXPOSURE TO *FUNGI*;

    d.  SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *IN-SURED* WAS SANE OR INSANE; OR

    e.  DISEASE except pus-forming infection due to *bodily injury* sustained in the ac-cident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Insured's Duty at the Time of an Accident or Loss**

   The *insured* must make a reasonable effort to identify:

   a. the owners, operators, and passengers of the vehicles involved in the accident or *loss*;

   b. the *person* or *persons* involved in the accident or *loss*; and

   c. the potential witnesses to the accident or *loss*.

2. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

3. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

4. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

5. **Questioning Under Oath**

   Under:

   a. No-Fault Coverage, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

   The scope of the questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with **Questioning Under Oath** is a condition precedent to receiving benefits.

   b. all other coverages, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to

answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

6. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft or vandalism;

c. allow *us* to:

   (1) inspect any damaged property before its repair or disposal;

   (2) test any part or equipment before that part or equipment is removed or repaired; and

   (3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

   (1) records;

   (2) receipts; and

   (3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

7. **Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage**

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

   (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

   (2) submit to be examined as often as *we* may reasonably require by physicians chosen and paid by *us*. A copy of the

report will be sent to the *person* upon written request.

   (a) Under No-Fault Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are no longer liable for subsequent benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable;

   (b) Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are not liable for coverage benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations will be considered unreasonable;

   (3) provide written authorization for *us* to obtain:

   (a) medical bills;

   (b) medical records;

   (c) wage, salary, and employment information; and

   (d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

   (4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. No-Fault Coverage or Medical Payments Coverage must, at *our* request, submit documentation from the appropriate healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage, or described in

2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, confirming whether that healthcare provider determined the injured *insured* had, or did not have, an *emergency medical condition*;

c.  No-Fault Coverage and Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d.  Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner or driver remains unknown, to the police within 24 hours or as soon as reasonably practicable, and to *us* within 30 days.

## GENERAL TERMS

1.  **When Coverage Applies**

    The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2.  **Where Coverage Applies**

    The coverages provided by this policy are shown on the Declarations Page.

    a.  Liability Coverage, Property Damage Liability Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Physical Damage Coverages apply to accidents and *losses* that occur:

        (1)  in the United States of America and its territories and possessions;

        (2)  in Canada; and

        (3)  while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

    b.  No-Fault Coverage applies to accidental *bodily injury* sustained:

        (1)  by an *insured* in Florida; and

        (2)  by *you* and *relatives* outside Florida; but within:

            (a)  the United States of America, its territories or possessions; or

            (b)  Canada,

        while *occupying your car*, a *newly acquired car*, or a *temporary substitute car*.

    c.  Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3.  **Limited Coverage in Mexico**

    This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

    Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

    a.  **Liability Coverage**

        For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

        *We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

    b.  **Property Damage Liability Coverage**

        For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Property Damage Liability Coverage is changed to read:

        *We* may, in addition to the damages described in items 1. and 2. of the **Insuring Agreement** of this policy's Property Damage Liability Coverage, pay or reimburse,

at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Property Damage Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

c.  **No-Fault Coverage**

The definition of *insured* is changed read:

*Insured* means named insured and *relatives* while *occupying*:

(1)  *your car*;

(2)  a *newly acquired car*;

(3)  a *temporary substitute car*; or

(4)  a *trailer* while attached to a *car* described in (1), (2), or (3) above.

d.  **Medical Payments Coverage**

e.  **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF FLORIDA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Florida in the United States of America.

4.  **Persons Acting On Our Behalf**

A company employee adjuster, independent adjuster, attorney, investigator, or other *persons* acting on *our* behalf that needs access to an *insured* or claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the *insured* or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The *insured* or claimant may deny access to the property if the notice has not been provided. The *insured* or claimant may waive the 48-hour notice.

A public adjuster must ensure prompt notice of property loss claims submitted to *us* by or through a public adjuster or on which a public adjuster represents the *insured* at the time the claim or notice of loss is submitted to *us*. The public adjuster must ensure that notice is given to *us*, the public adjuster's contract is provided to *us*, the property is available for inspection of the loss or damage by *us*, and *we* are given an opportunity to interview the *insured* directly about the loss and claim. *We* must be allowed to obtain necessary information to investigate and respond to the claim.

*We* may not exclude the public adjuster from its in-person meetings with the *insured*. *We* shall meet or communicate with the public adjuster in an effort to reach agreement as to the scope of the covered loss under the insurance policy. This section does not impair the terms and conditions of the insurance policy in effect at the time the claim is filed.

A public adjuster may not restrict or prevent *us*, company employee adjuster, independent adjuster, attorney, investigator, or other *person* acting on *our* behalf from having reasonable access at reasonable times to an *insured* or claimant or to the insured property that is the subject of a claim.

A public adjuster may not act or fail to reasonably act in any manner that obstructs or prevents *us* or *our* adjuster from timely conducting an inspection of any part of the insured property for which there is a claim for loss or damage. The public adjuster representing the *insured* may be present for *our* inspection, but if the unavailability of the public adjuster otherwise delays *our* timely inspection of the property, the public adjuster or the *insured* must allow *us* to have access to the property without the participation or presence of the public adjuster or *insured* in order to facilitate *our* prompt inspection of the loss or damage.

5. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

   (1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

   (2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6. **Changes to This Policy**

   a. **Changes in Policy Provisions**

   *We* may only change the provisions of this policy by:

   (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

   (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Florida without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

   b. **Change of Interest**

   (1) No change of interest in this policy is effective unless *we* consent in writing.

   (2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page

dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

   (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

   (b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

   c. **Joint and Individual Interests**

   If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

   d. **Change of Policy Address**

   *We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

   (1) *you*; or

   (2) the United States Postal Service.

7. **Premium**

   a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

   b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

   c. The premium for this policy may vary based upon:

   (1) the purchase of other products or services from the *State Farm Companies*;

   (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

42
9810A

any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

8. **Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 9. and 10. below.

9. **Nonrenewal**

If *we* decide not to renew this policy, then, at least 45 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page.

10. **Cancellation**

a. **How You May Cancel**

(1) *You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

(2) However, if the policy provides Liability Coverage or Property Damage Liability Coverage and No-Fault Coverage, *you* may not cancel *your* policy during the first two months immediately following the policy effective date unless:

(a) *your car* has been totally destroyed;

(b) *you* have transferred ownership of *your car*;

(c) *you* have purchased another policy covering *your car*; or

(d) *you* are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

b. **How and When We May Cancel**

(1) *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(2) Except as provided under **Cancellation Due to Incorrect Premium**, the date cancellation is effective will be at least:

(a) 10 days after the date *we* mail or deliver the cancellation notice, if the cancellation is because the premium was not paid when due; or

(b) 45 days after *we* mail or deliver the cancellation notice, if the cancellation is because of any other reason.

(3) If *we* cancel this policy for nonpayment of premium during the first 60 days immediately following the effective date of this policy, *we* will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

(4) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless it is based on one or more of the following reasons:

(a) Nonpayment of premium;

43
9810A

(b) *You*, any **resident relative**, or any other **person** who usually drives **your car** has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during its policy period; or

(c) Material misrepresentation or fraud.

c. **Cancellation Due to Incorrect Premium**

(1) If *we* determine that *we* have charged *you* an incorrect premium for coverages requested in *your* insurance application, *we* will immediately notify *you* of any additional premium due. *You* may:

(a) maintain *your* policy in force by paying the additional amount due by the date stated in the notice; or

(b) cancel *your* policy by the date stated in the notice and receive a refund of any unearned premium.

(2) If *you* fail to respond by the date stated in the notice *we* will cancel *your* policy. The date cancellation is effective will be at least 14 days after the date *we* mail or deliver the cancellation notice.

d. **Return of Unearned Premium**

(1) If *you* cancel this policy, then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later.

(2) If *we* cancel this policy, then premium will be earned on a pro rata basis. Any unearned premium will be mailed at the time *we* cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

11. **Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*. This does not include a post loss assignment of benefits.

12. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the **insured** or his or her estate will not relieve *us* of *our* obligations under this policy.

13. **Concealment or Fraud**

a. **Coverages Other Than No-Fault and Medical Payments Coverage**

There is no coverage under this policy for any **person** who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage and Medical Payments Coverage**

Benefits shall not be due or payable to or on behalf of an **insured person** if that **person** has committed, by material act or omission, any insurance fraud relating to No-Fault Coverage or Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the **insured** or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under No-Fault Coverage or Medical Payments Coverage of the **insured person** who committed the fraud, irrespective of whether a portion of the **insured person's** claim may be legitimate, and any benefits paid prior to the discovery of the **insured person's** insurance fraud shall be recoverable by *us*, in their entirety, from the **person** who committed insurance fraud. *We* are entitled to all *our* costs and attorney's fees in any action in which *we* prevail that enforces *our* right of recovery under this provision.

Neither *we* nor the **insured** is required to pay a claim or charges:

(1) for any service or treatment that was not lawful at the time rendered; or

(2) to any **person** who knowingly submits a false or misleading statement relating to the claim or charges.

If *we* have reasonable belief that a fraudulent insurance act (s. 626.989, Florida Statutes, or s. 817.234, Florida Statutes) has been committed, *we* shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, *we* have an additional 60 days to

44
9810A

conduct a fraud investigation. Notwithstanding the demand letter conditions under the **Legal Action Against Us** provision of this policy, no later than 90 days after the submission of the claim, *we* must deny the claim or pay the claim with simple interest as provided in d. (2) under the **Legal Action Against Us** provision of this policy. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

14. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, that is not an *insured*, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

(1) If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

(2) *We* have a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle for *our* payments of No-Fault benefits to any *person* having been an *occupant* of the commercial motor vehicle or having been struck by the commercial motor vehicle as a *pedestrian*.

*Our* right of reimbursement for benefits under No-Fault Coverage does not apply to an owner or registrant of a taxicab as identified in s.627.733(1)(b), Florida Statutes.

15. **Mediation**

The *insured* or *we* may demand mediation of any claim:

a. in an amount of $10,000 or less, resulting from:

1. *bodily injury* under No-Fault Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverages; or

2. death of or loss to an *insured* under Death, Dismemberment and Loss of Sight Coverage; or

b. in any amount, for a *loss* covered under Physical Damage Coverages,

by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Florida Department of Financial Services. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible.

Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a *person* files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

16. **Arbitration**

  a. The *insured* or *we* may request, in writing, arbitration of any claim. If *you* and *we* agree to arbitrate, then arbitration will follow the procedure outlined below.

    (1) The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

    (2) The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

    (3) Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

    (4) The arbitrators shall only decide the answers to the following two questions:

      (a) are damages compensatory; and

      (b) if damages are compensatory, then what is the amount of compensatory damages.

    (5) Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

    (6) A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

      (a) *us*;

      (b) the *insured*;

      (c) any assignee of the *insured*; and

      (d) any *person* or organization with whom the *insured* expressly or impliedly contracts.

    (7) Subject to (1), (2), (3), (4), (5), and (6) above, state court rules governing procedure and admission of evidence will be used.

    (8) *We* do not waive any of *our* rights by submitting to arbitration.

  b. *We* are not bound by any:

    (1) judgment obtained without *our* written consent; or

    (2) default judgment against any *person* or organization other than *us*.

  c. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

17. **Legal Action Against Us**

  a. Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*.

  b. Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.

  c. Under No-Fault Coverage, *we* shall create and maintain for each *insured* a log of No-Fault Coverage benefits *we* have paid on behalf of the *insured*. If litigation is commenced, *we* shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

  d. In addition, legal action may only be brought against *us* regarding:

    (1) Liability Coverage and Property Damage Liability Coverage, after the amount of damages an *insured* is legally liable to pay has been finally determined by:

      (a) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

      (b) agreement between the claimant and *us*.

    (2) No-Fault Coverage, if within 30 days after *our* receipt of written notice of an intent to initiate litigation for:

      (a) an overdue claim, *we* fail to pay the overdue claim, applicable interest, and a penalty of 10% of the overdue amount that *we* pay, subject to a maximum penalty of $250; or

46
9810A

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10%, subject to a maximum penalty of $250, when *we* pay for such future treatment.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time *we* have to pay the claim pursuant to the *No-Fault Act*.

The notice must state that it is a "demand letter under s.627.736" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to *us*; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, any other standard form approved by the Florida Office of Insurance Regulation, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(3) Medical Payments Coverage unless *we* receive written notice of an intent to initiate litigation and if within 30 days after *our* receipt of such for:

(a) a claim, *we* fail to pay the claim; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice must state that it is a "demand letter for Medical Payments Coverage" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to us; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, or any other standard form approved by the Florida Office of Insurance Regulation, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and ***medically necessary***.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(4) Uninsured Motor Vehicle Coverage if the ***insured*** or that ***insured's*** legal representative within five years immediately following the date of the accident:

(a) presents an Uninsured Motor Vehicle Coverage claim to *us*;

(b) files a lawsuit, in a state or federal court that has jurisdiction against *us*;

(c) consents to a jury trial if requested by *us*; and

(d) agrees that *we* may contest the issues of liability and the amount of damages.

*We* are not bound by any judgment obtained without *our* written consent.

*We* are not bound by default judgment against any ***person*** or organization other than *us*.

Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

18. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. Florida will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

19. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

Policy Form 9810A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

## 6128S.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   a. *Newly Acquired Car* is changed to read:

      *Newly Acquired Car* means a *car* newly **owned by you** or a *resident relative*.

      A *car* ceases to be a *newly acquired car* on the earlier of:

      1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

      2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

      If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

   b. *Pedestrian* is changed to read:

      *Pedestrian* means a *person* who is not *occupying*:

      1. a *motor vehicle*;

      2. a self-propelled vehicle; or

      3. a trailer or other vehicle attached to a self-propelled vehicle.

   c. *Relative* is changed to read:

      *Relative* means a *person*, other than *you*, who is:

   1. related to any named insured in any degree by blood, by marriage, or by adoption and who makes his or her home in the same family unit with that named insured, whether or not temporarily living elsewhere, or

   2. a ward or foster child of any named insured or of a *person* described in 1. above and who makes his or her home in the same family unit with that named insured.

2. **LIABILITY COVERAGE (Bodily Injury and Property Damage)**

   a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

      *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

      a. neither **owned by**, nor hired by, that other *person* or organization; and

      b. neither available for, nor being used for, carrying *persons* for a charge.

   b. The following is added to **Supplementary Payments**:

      Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c.  **Exclusions**

(1) The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a.  motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b.  residence while rented to or leased to an *insured*; or

c.  private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1.  PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2.  *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

3.  **PROPERTY DAMAGE LIABILITY COVERAGE**

a.  Item 4. of *Insured*, under **Additional Definition**, is changed to read:

*Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability.

This provision applies only if the vehicle is:

a.  neither *owned by*, nor hired by, that other *person* or organization; and

b.  neither available for, nor being used for, carrying *persons* for a charge.

b.  The following is added to **Supplementary Payments**:

Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

c.  **Exclusions**

(1) The exception to exclusion 9. is changed to read:

This exclusion does not apply to damage to a:

a.  motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b.  residence while rented to or leased to an *insured*; or

c.  private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1.  PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2.  *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

***ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

4. **NO-FAULT COVERAGE**

   a. **Additional Definition**

   Item 2. of the definition of ***Insured*** is changed to read:

   ***Insured*** means any other ***person*** while ***occupying*** or struck as a ***pedestrian*** by:

   a. ***your car***;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

   b. **Insuring Agreement**

   Item 1.C. is changed to read:

   follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following ***persons*** or entities:

   (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

   (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

   (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

   (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above; and

   (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

   (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

   (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

   (c) provides at least four of the following medical specialties:

   i. general medicine;

   ii. radiography;

   iii. orthopedic medicine;

   iv. physical medicine;

   v. physical therapy;

   vi. physical rehabilitation;

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

c. **Limits**

(1) Item 2.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 2. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

d. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

5. **MEDICAL PAYMENTS COVERAGE**

a. **Insuring Agreement**

Item 2.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following ***persons*** or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

(a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i.   general medicine;

    ii.   radiography;

    iii.   orthopedic medicine;

    iv.   physical medicine;

    v.   physical therapy;

    vi.   physical rehabilitation;

    vii.   prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

b.  **Limits**

(1) Item 3.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 3. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

c.  **Exclusions**

(1) Exclusion 7. is changed to read:

THERE IS NO COVERAGE FOR AN **_INSURED_** WHO:

a.  IS    **_OCCUPYING_**    OR THROUGH BEING STRUCK

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

AS A **_PEDESTRIAN_** BY A VEHICLE **_OWNED BY_** ANY NAMED INSURED OR ANY **_RELATIVE_** WHICH IS NOT INSURED UNDER THIS POLICY; OR

b.  AT THE TIME OF THE ACCIDENT OWNS A **_MOTOR VEHICLE_** SUBJECT TO THE **_NO-FAULT ACT_** AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE **_NO-FAULT ACT_**.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any **_relative_** while **_occupying your car_**, a **_newly acquired car_**, a **_temporary substitute car_**, or a **_non-owned car_** if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN **_INSURED_** WHO IS:

1.  PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2.  **_OCCUPYING_** OR STRUCK BY **_YOUR CAR_**, A **_NEWLY ACQUIRED CAR_**, OR A **_TEMPORARY SUBSTITUTE CAR_**

WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

6.  **UNINSURED MOTOR VEHICLE COVERAGE (Stacking)**

a.  **Additional Definitions**

"**_Uninsured Motor Vehicle_** does not include a land motor vehicle or trailer" is changed to read:

**_Uninsured Motor Vehicle_** does not include a land motor vehicle or trailer:

1.  whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an **_uninsured motor vehicle_** for **_bodily injury_** sustained by **_you_** or a **_resident relative_** while the vehicle is being operated by a **_person_** other than **_you_** or a **_resident relative_**;

2.  designed for use primarily off public roads except while on public roads;

3.  while located for use as a dwelling or other premises; or

4.  whose owner or operator could have been reasonably identified.

b.  **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN **_INSURED_** WHO IS:

1.  PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2.  **_OCCUPYING_** OR STRUCK BY **_YOUR CAR_**, A **_NEWLY_**

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

*ACQUIRED CAR*, OR A *TEM-PORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

7. **UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**

   a. **Additional Definitions**

   "*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

   *Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

   1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

   2. designed for use primarily off public roads except while on public roads;

   3. while located for use as a dwelling or other premises; or

   4. whose owner or operator could have been reasonably identified.

   b. **Exclusions**

   (1) Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   b. WHILE *OCCUPYING* A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, provided that the vehicle is *owned by* neither that named insured nor that spouse; OR

   c. WHILE A *PEDESTRIAN* AND IS STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*;

   (2) The following exclusions are added:

   (a) THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A VEHICLE *OWNED BY* THAT *INSURED* IF THAT VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

   (b) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

   1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

8. **PHYSICAL DAMAGE COVERAGES**

   a   The paragraph that reads:

   If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

   is changed to read:

   **Deductible**

   1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any ***loss*** to a ***newly acquired car***.

   2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any ***loss caused by collision*** to a ***newly acquired car***.

b. **Exclusions**

   The following exclusion is added:

   THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

9. **INSURED'S DUTIES**

   a. Item 7.a.(3) is changed to read:

   An ***insured*** making claim under:

   a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

      (3) provide written authorization for *us* to obtain medical bills, medical records, wage information, salary information, employment information, and any other relevant information *we* deem reasonably necessary to substantiate the claim.

      Such authorizations must not:

      (a) restrict *us* from performing *our* business functions in:

         (i) obtaining relevant and reasonably necessary records, bills, information, and data; nor

         (ii) using or retaining relevant and reasonably necessary records, bills, information, and data collected or received by *us*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(b) require **us** to violate federal or state laws or regulations;

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

    (i) to enable performance of **our** business functions;

    (ii) to meet **our** reporting obligations to insurance regulators;

    (iii) to meet **our** reporting obligations to insurance data consolidators; and

    (iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 7.:

An **insured** making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to **us** all information **we** need to comply with federal and state laws and regulations.

10. **GENERAL TERMS**

a. The following is added to **Limited Coverage in Mexico**:

**Uninsured Motor Vehicle Coverage (Stacking and Non-Stacking)**

b. Under **Limited Coverage in Mexico**, **Legal Action Against Us** is changed to read:

Any legal action against **us** arising out of an accident or **loss** occurring in the country of Mexico must be brought in a Florida state court in the United States of America, or a United States of America District Court that has jurisdiction.

c. The provision entitled **Persons Acting On Our Behalf** is deleted in its entirety.

d. The following is added to **Newly Owned or Newly Leased Car**:

If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

e. The following is added to **Premium**:

If due to insufficient funds, payment of premium for this policy by debit

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

card, credit card, electronic funds transfer, or electronic check is returned, is declined, or cannot be processed, *we* may impose an insufficient funds fee of $15 per occurrence.

f. **Return of Unearned Premium** is changed to read:

(1) If *you* cancel this policy:

(a) then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed or electronically transferred to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the *State Farm Companies*.

(2) If *we* cancel this policy:

(a) then premium will be earned on a pro rata basis. Any unearned premium will be mailed or electronically transferred at the time we cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any

premium paid to unpaid balances of other policies with the *State Farm Companies*.

g. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice. This provision does not apply to any notice to non-renew or cancel.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, relevant data, and any other reasonable information to process the claim;

(2) using any of the items described in item b.(1) above; or

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

    (3) retaining:

        (a) any of the items in item b.(1) above; or

        (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

    (1) to enable performance of *our* business functions;

    (2) to meet *our* reporting obligations to insurance regulators;

    (3) to meet *our* reporting obligations to insurance data consolidators;

    (4) to meet other obligations required by law; and

    (5) as otherwise permitted by law.

d. *Our* rights under a., b., and c. above shall not be impaired by any:

    (1) authorization related to any claim submitted under this policy; or

    (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6910A
Page 1 of 1

**6910A AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **PHYSICAL DAMAGE COVERAGES**

   **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

   The following is added:

   If there is disagreement as to the cost of repair, replacement, or recalibration of glass, an appraisal will be used as the first step toward resolution. Appraisal will follow the rules and procedures as listed below:

   a. The owner and **we** will each select a competent appraiser.

   b. The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or **we** may petition a court that has jurisdiction to select the third appraiser.

   c. Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

   d. The appraisers shall only determine the cost of repair, replacement, and recalibration of glass. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

   e. A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

   f. **We** and **you** do not waive any rights by submitting to an appraisal.

2. **GENERAL TERMS**

   a. Item (3) of **How and When We May Cancel**, under **Cancellation**, is changed to read:

   If **we** cancel this policy for nonpayment of premium during the first 30 days immediately following the effective date of this policy, **we** will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

   b. Item a. of **Legal Action Against Us** is changed to read:

   Legal action may only be brought against **us** within five years immediately following the date of the accident or **loss**. However, this limitation of action is tolled for a period of 60 days after **we** receive notice from the Florida Department of Financial Services, in accordance with section 624.155, Florida Statutes.

6910A

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

**State Farm Mutual Automobile Insurance Company**
7401 Cypress Gardens Boulevard
Winter Haven FL  33888

98334-1 A                    MUTL  VOL

## DECLARATIONS PAGE

NAMED INSURED

AT1                              59-6720-1  A      A
         000249    0058
LASETER, MARY

JACKSONVILLE FL   32233-5940

| POLICY NUMBER    649 9934-F21-59C |
| POLICY PERIOD JUN 23 2014 to DEC 21 2014 |
| 12:01 A.M. Standard Time |

AGENT
EDIE WILLIAMS INS AGCY INC
2325 PARK ST
JACKSONVILLE, FL 32204-4317

PHONE: (904)425-4054  or  (904)425-4055

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|------------|--------------------|-------|
| 2008 | HONDA | CRV | SPORT WG | JHLRE38728C028262 | 200HZ0A0001 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person    Each Accident | |
| | $25,000       $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $25,000 | |
| P10 | No-Fault Coverage | |
| C | Medical Payments Coverage | |
| | Emergency Medical Condition Limit - | |
| | Each Person | |
| | $5,000 | |
| | Not An Emergency Medical Condition Limit - | |
| | Each Person | |
| | $1,250 | |
| D | Comprehensive Coverage - $50 Deductible | |
| G | Collision Coverage - $250 Deductible | |
| R1 | Car Rental and Travel Expenses Coverage | |
| | Limit - Car Rental Expense | |
| | Each Day,    Each Loss | |
| | 80%          $500 | |
| U3 | Uninsured Motor Vehicle Coverage (Non-Stacking) | |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $25,000       $50,000 | |

| Total premium for JUN 23 2014 to DEC 21 2014. | | This is not a bill. |

### IMPORTANT MESSAGES

Your policy will be assessed 1.3% due to the Florida Hurricane Catastrophe Fund Assessment.

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

Replaced policy number 6499934-59B.

**Your total renewal premium for JUN 21 2014 to DEC 21 2014 is**

For questions, problems or to obtain information about coverage call: (904)425-4054.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET - FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU WITH ANY SUBSEQUENT RENEWAL NOTICE.

Agent:     EDIE WILLIAMS INS AGCY INC
Telephone: (904)425-4054
Prepared   JUN 25 2014          6720-A77

00154/00084
155-3866 2  04-2005 (o1a025hd)          See Reverse Side
I4SX0N    (o1a025le)                              (o1a0254c)

This policy is issued by State Farm Mutual Automobile Insurance Company.

### MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                    President

B10